NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2033
_____

ECOLAB INC.;
ECOLAB USA INC.,
Appellants

v.

SC JOHNSON PROFESSIONAL GROUP LIMITED,
formerly known as DEB Group Limited;
DEB IP LIMITED
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1:23-cv-00170)
District Judge: Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 24, 2026

Before: HARDIMAN, SCIRICA, and AMBRO, *Circuit Judges.*

(Filed:  July 20, 2026)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This case involves an interpretive dispute over a contract governing one company's right to enforce another company's patents. Deb Group, now known as SC Johnson Professional Group, granted Ecolab Inc. a non-exclusive license to make and sell patented hand sanitizer and skin-care products. Deb also granted Ecolab the right to bring suits against certain infringers of those same patents. However, Deb's contract limited that right. Under its terms, Ecolab required an affirmative written communication from Deb granting permission to bring suit.

Ecolab contends it has the right to sue infringers of Deb's patent under this contractual provision. Accordingly, this dispute turns on whether Ecolab can show Deb provided an affirmative written communication within the meaning of the contract. Ecolab presented several theories at the District Court, but now only directs our attention to a three-page 2022 letter from Deb. The District Court found this letter did not support Ecolab's claim, in part because Deb twice explicitly states in the letter it was *not* an affirmative written communication. The Court dismissed the case and denied Ecolab's motion to amend its complaint. We agree, and, since we find Ecolab's alternative arguments unavailing, we will affirm.

I.[1]

The contract at issue is a patent license agreement resulting from two prior

---

[1] We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

lawsuits between the parties—an original agreement in 2013 and an amendment to that agreement in 2022. Collectively, these contracts granted Ecolab a non-exclusive, royalty-bearing license to make and sell certain hand and skin-sanitizing products patented by Deb.

These contracts also provided Ecolab with a conditional right to sue certain infringers of Deb's patents. Those conditions arise from both the original 2013 language and the 2022 amendment language. Section 4.1 of the 2013 contract states:

> [Deb] will take commercially reasonable steps to enforce its patents. Should [Deb] elect, at its sole discretion, to not enforce their own patents against a third party infringer, [Ecolab] shall have the right to assert the patents against such third party infringers at its own expense.

App. 739. The 2022 amendment added a new provision, Section 4.1(a), which reads:

> [Deb] shall have no affirmative obligation to [Ecolab] pursuant to this Section 4.1 to take any steps to enforce its patents. No action or inaction other than an affirmative written communication of an election by [Deb] to [Ecolab's designated counsel] shall be deemed an election by Deb Group not to enforce its patents pursuant to this Section 4.1. For purposes of clarity, Ecolab acknowledges that . . . silence by [Deb], or any absence of communication from [Deb], shall not be considered an affirmative communication of any election.

App. 779.

Just ten days after this amendment went into effect, Ecolab sent a letter asserting Deb *had* provided an affirmative written communication permitting exercise of patent enforcement rights under Section 4.1—within the amended contract itself.[2] Deb replied it

---

[2] The theory Ecolab pressed at the time—though strikingly similar to its current theory—was dismissed by the District Court and raised only "in passing" in a footnote of

had "not made, and [was] not making in this letter, an election not to enforce the Deb Group Patents under Section 4.1 of the License Agreement." App. 803. After another letter from Ecolab, this round of communication culminated in a three-page letter from Deb's counsel, sent December 1, 2022, which is the subject of this case.[3]

Two passages from this December 1, 2022 letter are relevant to the resolution of this case.

The first, which is the language Ecolab directs our attention to, requires a bit of context. During prior exchanges between the companies, Ecolab had taken the position the two latest-expiring patents covered by the license agreement would be invalid after September 29, 2024 under a theory of obviousness-type double patenting,[4] and accordingly contended it should not have to pay royalties after that date to Deb. Recognizing the obviousness-type double patenting issue, Deb stated it would not compel Ecolab to pay royalties on those patents after September 29, 2024—a commitment it later

Ecolab's brief before us and is accordingly forfeited. *DLJ Mortg. Cap., Inc. v. Stevens*, 167 F.4th 632, 635 (3d Cir. 2026) (citations omitted).

[3] The three pages at issue begin with a one-page letter from Deb dated December 1, 2022. That letter incorporated by reference a two-page letter from Deb's outside counsel dated November 30, 2022. The parties and the District Court package the two letters together in their discussion, and we will do likewise.

[4] Obviousness-type double patenting is a judicially created doctrine which prevents one party from obtaining multiple patents that cover obvious variants of the same invention. It functions, in part, so an inventor cannot artificially extend the life of one patent by getting a second patent covering an obvious variation of the same invention with a later expiration date. *See Gilead Scis., Inc. v. Natco Pharma Ltd.,* 753 F.3d 1208, 1212–14 (Fed. Cir. 2014); *see generally* Daniel Kazhdan, *Obviousness-Type Double Patenting: Why It Exists and When It Applies*, 53 AKRON L. REV. 1017, 1023–28 (2019).

formalized in the 2022 settlement. *See* App. 750 ("Deb Group confirms it will not seek to enforce the [patents] in the United States, nor collect royalties thereon, for activities carried out in the United States by Deb Group licensees on and after September 30, 2024."). However, after securing freedom from royalties and potential enforcement by Deb after September 29, 2024, Ecolab then asserted "at least some" claims from the two patents *were not* subject to obviousness-type double patenting, and as such should still be enforceable after September 29, 2024—by Ecolab. App. 809–10.

This brings us back to the December 1, 2022 letter. Deb, responding in the letter to Ecolab's latest claim, pushed back on the idea "at least some" patents were immune from challenge by writing:

> In any event, for the avoidance of doubt, [Deb] has independently analyzed all claims of the [patents] and has concluded that all are subject to an invalidity challenge due to obviousness type double patenting beyond September 29, 2024.

App. 818. Ecolab contends this language satisfied the written communication requirement under Section 4.1 of the amended 2022 contract. In other words, it believes this constituted Deb's election not to enforce the patents, triggering Ecolab's patent enforcement rights.

But there is a second item of note from Deb's December 1, 2022 letter. Immediately after the above quoted text, Deb wrote:

> [Ecolab] do[es] not deny or otherwise substantively address the points made in [Deb's first response] letter establishing that Ecolab has not triggered its rights under Section 4.1 of the License Agreement. . . . [Deb] has not, and does not in this letter, take a position on its rights and obligations under Section 4.1. In other words, contrary to your assertion, there has been no breach as you have alleged.

5

App. 818. Deb's letter also asserts that "[Deb] did not make an election under Section 4.1 of the License Agreement, nor has [Deb] refused to comply with its obligations under Section 4.1 of the License Agreement." App. 816.

Ecolab sued Deb for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference. The District Court dismissed Ecolab's first amended complaint for failure to state a claim and then denied Ecolab leave to file a second amended complaint as futile. This appeal followed.

## II.

The District Court had jurisdiction over this diversity case under 28 U.S.C. § 1332, and we have appellate jurisdiction over Ecolab's timely appeal from the District Court's order denying leave to file a second amended complaint under 28 U.S.C. § 1291.[5] We generally review an order denying leave to file an amended complaint for abuse of

---

[5] Deb contends this case is now moot, because it filed a terminal disclaimer for the patents at issue preventing any party from enforcing them after September 29, 2024. But Ecolab's second amended complaint pleads damages claims arising from Deb's purported contractual breach. "For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019); *see Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 41 (3d Cir. 1985) ("[T]he availability of damages or other monetary relief almost always avoids mootness.") (citations omitted). Deb contends that a finding it breached the contract would still lead to no damages, because its performance would not have saved the invalid patents at issue, therefore preventing any damages from accruing. But this logic relies on antecedent legal propositions—specifically, that Deb correctly determined the patents were no longer valid (which Ecolab disputes), Deb did not violate the contract by rendering those patents invalid, and no damages could be assessed following that invalidity. And even if we were to agree with Deb on all points required for it to prevail, and find Ecolab entitled to no damages as a matter of law, that determination should be made "on the merits, not on the grounds of mootness." *See Jersey Cent. Power & Light Co.*, 772 F.2d at 41 (citation omitted). "Courts do not say,

discretion. *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 193 (3d Cir. 2022). But where, as here, the denial turns on the District Court's legal conclusion the amended complaint would fail to state a claim, we review that "futility determination" *de novo*. *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025).

We typically apply state law to determine the meaning and effect of contracts. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017). "When interpreting a contract, Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021). Because the "determination of ambiguity lies within the sole province of the court," *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010), a "contract is not rendered ambiguous simply because the parties do not agree upon its proper construction," *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible to different reasonable interpretations." *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1062 (Del. 2010).[6] But if the complaint does not "contain sufficient factual allegations so as to

---

when a defendant wins on the law, that the case is moot." *Trinity 83 Dev., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599, 602 (7th Cir. 2019).

[6] Given Ecolab's emphasis on the distinction between contract construction and interpretation, it is worth discussing Delaware's quoted usage of those terms. While we have recognized a legal distinction between contract interpretation and contract construction, *see Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1052–53 (3d Cir. 1984), Delaware decisions largely follow the general trend of

7

state a facially plausible claim for relief," dismissal is proper. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Turning our attention to the contract, we agree with the Appellee. There is only one reasonable interpretation on the decisive issues in this case: the scope of Ecolab's patent enforcement right, the mechanism which activates the right, and the absence of any supplementary obligation by Deb. On scope, Ecolab was granted the right to enforce the licensed patents, but only should Deb "elect, at its sole discretion, to not enforce [its] own patents." App. 739. On mechanism, the election must come in the form of an "affirmative written communication" by Deb, and no other "action or inaction," nor "silence" or "absence of communication," "shall be deemed an election." App. 779. And on supplementary enforcement obligations, while Deb initially agreed to "take commercially reasonable steps to enforce its patents," App. 739, the 2022 amendment clarified that Deb had "no affirmative obligation to [Ecolab] pursuant to this Section 4.1 to take any steps to enforce its patents," App. 779; *see Cabela's LLC v. Wellman*, 2018 WL 5309954, at *4 (Del. Ch. Oct. 26, 2018) ("Delaware recognizes that where a new, later contract between the parties covers the same subject matter as an earlier contract,

---

equating construction with interpretation. *See Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1195–96; *VLIW Tech., LLC*, 840 A.2d at 615; *M.K. v. Prestige Acad. Charter Sch.*, 470 F. Supp. 3d 417, 425 n.4 (D. Del. 2020) ("Most Delaware decisions use the terms interchangeably."); *see generally* 5 Timothy Murray, *Corbin on Contracts* § 24.1 (rev. ed. Fall 2025) ("[T]he trend among modern courts is to treat the terms 'interpretation' and 'construction' as interchangeable."). Though Delaware courts have occasionally bucked the trend, *see In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 2014 WL 2768782, at *17 (Del. Ch. June 12, 2014), we do not impose our own understanding of those terms when seeking to faithfully find and apply Delaware's law.

the new contract supersedes and controls that issue, if the two agreements conflict.")
(citations omitted).

Accordingly, for Ecolab to prevail it must have received an affirmative, written communication by Deb electing to activate its enforcement right under Section 4.1 of the contract. Examining the letter at issue, we find the opposite. The December 1, 2022 letter explicitly states Deb "has not, and does not in this letter, take a position on its rights and obligations under Section 4.1," App. 818, and it "did not make an election under Section 4.1 of the License Agreement," App. 816.

In the face of these statements, Ecolab attempts to manufacture an interpretive dispute. Ecolab contends the contract disallows Deb from communicating it will not enforce the patents while simultaneously refusing to give Ecolab its own right to enforce them. "Nowhere . . . is Deb given a right to elect not to enforce its patents, but then separately to elect not to consent to the transfer of the enforcement rights to Ecolab, or bar Ecolab's immediate vesting with the enforcement rights upon Deb's election." Ecolab Br. at 19, but "Deb's interpretation of Section 4.1(a) requires that Deb elect not to enforce **and** agree to give Ecolab the enforcement rights," Ecolab Br. at 24 (emphasis in original).

There are two problems with this theory. First, the language Ecolab points to, where Deb acknowledges the patents are "subject to an invalidity challenge due to obviousness type double patenting beyond September 29, 2024," cannot be understood as an election not to enforce the covered patents. App. 818. In Ecolab's view, when Deb stated the patents are "subject to . . . challenge," it meant it believed the patents *could not*

be enforced and was accordingly committing to never try to enforce them.  *Id.*  But Deb's language in the letter did not go that far.  For example, when our sister court wrote "the validity of patents has always been subject to challenge in district court," it did not mean no patent could ever withstand such a challenge.  *Celgene Corp. v. Peter*, 931 F.3d 1342, 1359 (Fed. Cir. 2019).  It meant the patents are open to dispute, questioning, or contestation.  *See Subject*, BLACK'S LAW DICTIONARY (12th ed. 2024).  So too here.  Acknowledging a legal infirmity, or the possibility of a challenge, cannot be understood as giving up all interest in enforcement.

Second, even if the "subject to . . . challenge" language means what Ecolab contends it means, the contract itself would defeat Ecolab's argument.  The contract tells us an implicit acknowledgement of non-enforcement would be insufficient, because Deb's election must come in the form of an "affirmative written communication."  App. 779.  Even the fact of non-enforcement could not be an election, because the contract tells us no "action or inaction other than an affirmative written communication . . . shall be deemed an election," and Deb has "no affirmative obligation to [Ecolab] . . . to take any steps to enforce its patents."  App. 779.  So Deb must identify *some* affirmative written communication electing to activate Section 4.1.  Seeing only the opposite in this letter, Ecolab's argument fails.

Ecolab's other contentions for discarding the language of this contract—such as the specter of Deb licensing the patents for other producers without the royalty requirements that Ecolab is subject to—also fail.  When a contract is unambiguous, we will not "destroy or twist [its] language under the guise of construing it."  *Rhone-Poulenc*

10

*Basic Chems. Co.*, 616 A.2d at 1195. And while Ecolab's contentions make clear the contract was not as favorable as it may have liked, "[p]arties have a right to enter into good and bad contracts, [and] the law enforces both." *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010). It is not our role to "disturb a bargain because, in retrospect, it appears to have been a poor one." *Moscowitz v. Theory Ent. LLC*, 2020 WL 6304899, at *11 (Del. Ch. Oct. 28, 2020) (internal quotation omitted).[7]

### III.

For the reasons discussed, we will affirm.

---

[7] Since we determine Ecolab's contractual rights to enforce Deb's patents did not vest, we do not reach the further issue of which parties Ecolab would have the right to pursue enforcement actions against.